# Commonwealth of Massachusetts

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. _19cv1315_

_1985CV 01315_

_Louis J. Desy Jr._, PLAINTIFF(S),

v.

_AZZ, Inc._, DEFENDANT(S)

## SUMMONS

THIS SUMMONS IS DIRECTED TO _AZZ Incorporated_. (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the _Worcester Superior_ Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. If you need more time to respond, you may request an extension of time in writing from the Court.

2. How to Respond.  To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:
   a. Filing your signed original response with the Clerk's Office for Civil Business, _Worcester Superior_ Court, _225 Main St, Worcester, MA_ (address), by mail or in person, **AND**
   b. Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address: _Louis J. Desy Jr. 147 Heywood St. Worcester, MA 01604_

3. What to include in your response.  An **"Answer"** is one type of response to a Complaint.  Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer.  You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient.  A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov.courts/case-legal-res/rules of court.

## COMMONWEALTH OF MASSACHUSETTS
## SUPERIOR COURT DEPARTMENT

**WORCESTER, SS.**             **Civil Action No. 1985CV01315**

|  |  |
|---|---|
| **LOUIS J. DESY JR.** | ) |
| **Plaintiff** | ) |
| **v.** | ) |
| **AZZ, INCORPORATED,** | ) |
| **Defendant** | ) |

## COMPLAINT AND JURY DEMAND

### Introduction

1.    This action is brought by Plaintiff Louis J. Desy
Jr. against AZZ Incorporated for non-payment of wage bonus,
pursuant to M.G.L. c. 149, §§ 148 and 150, for non-payment
of overtime wages, pursuant to M.G.L. c. 151, §§ 1A and 1B.
Mr. Desy seeks damages for his unpaid wages, including
mandatory treble damages, interest, costs, and attorneys'
fees. In addition, this action is brought for age
discrimination, wrongful termination, plus libel and
slander committed by defendant AZZ Incorporated against
Plaintiff Louis J. Desy Jr., pursuant to M.G.L. c. 151B
(Massachusetts Fair Employment Practices Act) and the
Federal Age Discrimination in Employment Act (ADEA) for age
discrimination; pursuant to Massachusetts and Federal laws
against wrongful termination for violation of important

1

public policy where plaintiff tried to stop AZZ Inc from
committing a violation of the Foreign Corrupt Practices Act
(FCPA) when it agreed to a bribe to a Hong King Company, L
S International Ltd, of about $702,461 USD in return for a
contract with China Nuclear, through a joint venture (SDEE
Ltd) in China, for 128 million RMB and tried to convince
AZZ management to not improperly, not recognizing revenue
for FY2018 in order to move those profits into FY2019 in
violation of Sarbanes-Oxley Act and SEC Regulations on
reporting of earnings for publically traded companies,
partly as established in Massachusetts by case law in
Smith-Pfeffer v. Superintendent of Walter E. Fernald State
School, 404 Mass. 145, 149-50 (1989).

### Parties

2.    The Plaintiff, Louis J. Desy Jr, is an adult, age
55, resident of Worcester, Massachusetts. Mr. Desy worked
for AZZ, Incorporated from October 2007 to May 2018.

3.    Defendant AZZ, Inc. is a foreign corporation that
does business throughout the work, including in
Massachusetts.

### Facts

4.    Mr. Desy began working for AZZ in October 2007 as
an Assistant Controller.

2

5.    In or around August 2016, Plaintiff began working as the Accounting Manager, replacing a Controller, John Martin, who left the company around Monday, April 11, 2016. As part of his job, Mr. Desy was tasked with staying on schedule for the monthly close cycle, maintaining custom computer programs, and completing all tasks given, including the consolidated monthly financial statements for two divisions and monthly closing cycle; which required working evening hours, weekends and holidays. As such Plaintiff was entitled to overtime compensation for all hours worked over 40 in a week.

6.    During the last several years, Mr. Desy worked on average about 60 hours per week, resulting in twenty hours of overtime per week on average. He did not receive any overtime compensation.

7.    For the Fiscal Year 2018 (March 1, 2017 - February 28, 2018) Mr. Desy's wages were part of and subject to the Employee Incentive Program (EIP). That program set forth a specific formula for calculating the wage bonus amount for the EIP. Mr. Desy's base bonus for wages within the program was 20% of annual salary if the company made certain profit targets for net income.

8.    For Fiscal Year 2018, Mr. Desy, and all others under the EIP plan, were paid no bonus due to the net

3

income being less than 50% of the net income target for that fiscal year. If the net income was more or less than the net income target, the bonus amount was adjusted on a sliding scale of where below 50% of the net income target was no bonus paid and over 125% of the net income target was a bonus of 200% of the EIP base bonus amount.

9.   The reason that the net income was less than 50% of the target net income, resulting in a zero bonus under the EIP for FY2018, was because AZZ management ( Tom Furgeson as CEO, Paul Fehlman as CFO and James Byelick as Chief Accounting Officer & Vice President, Tara Mackey as Chief Legal Officer and Corporate Secretary, Bill Estes as Vice President of AZZ Electrical Group, Mark Kaluzny as International Electrical Group Controller ) illegally and improperly decided to not recognize about over one million dollars in revenue on the CYR project and other projects, which reduce net income by the same amount. The reason this was done was to improperly shift earnings to the next fiscal year (Fiscal Year 2019). This shifting of earnings or smoothing of earnings is sometimes referred to as 'earnings smoothing' and is illegal. 'Earnings Smoothing' is done by companies to make the company look better and more predictable than it is to the public stock market so the public thinks the company earnings have less variations

4

than they really do. This shifting of earnings from one fiscal year to another is incorrect treatment under General Accepted Accounting Principals (GAAP) or International Financial Reporting Standards (IFRS), illegal reporting as a publically traded company under Securities and Exchange Commission regulations (SEC) and a violation of Sarbanes-Oxley regulations on the accuracy and truthfulness of the reporting for publically traded companies. The benefit to the company was that it allowed the company to make the next fiscal year look better than it really was, and to save money on the order of several hundred thousand dollars by not paying any EIP amounts that was owed to employees of AZZ, Inc. for Fiscal Year 2018 (FY2018), and to illegally evade federal and state corporate income taxes on those profits for FY2018.

10. The amount of the loss of the EIP wage bonus to Mr. Desy was 20% of his annual salary or about $18,171.

11. Pursuant to state law requirements, Mr. Desy filed a complaint with the Massachusetts Attorney General's office and has received permission to proceed in court.

12. Throughout his time at AZZ, the plaintiff was subjected to numerous comments about his age, and perceived lack of technical ability based on his age. This is in spite of the fact that Plaintiff Louis Desy has a BS in

5

Computer Science Technology, Masters of Business
Administration and Masters of Science in Finance plus
decades of work experience in accounting, finance plus
experience with computer software, hardware and
programming.

13. During the last few years that the Plaintiff was
employed at AZZ, defendant AZZ systematically removed a
number of older employees from their jobs, usually without
warning. One example was the sudden discharge of John
Martin on April 11, 2016 with little to no warning. John
Martin and Plaintiff Louis Desy were a few of a number of
people removed from the company under such illegal
conditions. When Plaintiff left AZZ at the end of May 2018
he was one of the last of these older employees within the
AZZ Electrical Group and even the Accounting and Finance
group within AZZ Corporate.

14. During FY2018, defendant AZZ, Inc illegally
offered a bribe on the order of $702,461 USD to L S
International Ltd of Hong Kong, in return for 'influence'
to get a 128 million RMB contract in China on the Cross
Yangtze River (CYR project) project(https://www.azz.com/press-
releases/azz-inc-announces-contract-awards-underground-ultra-high-voltage-1100kv-gas-
insulated). Part of Plaitiff's proof of this incredible
incident is that Plaintiff personally witnessed the

approving of the paperwork for entry into the Oracle
payable system, with his own signature on some of the
paperwork and entry of the wire into the bank wire system
for payment to L S International Ltd of Hong Kong.

15. The 'commission payment' to L S International LTD
was looked into by Plaintiff Louis Desy because it seemed
very unusual. It was presented as a 'commission payment' to
a outside sales representative but did not seem 'proper' to
Plaintiff Louis Desy because the full commission payment of
about $702,461 USD was due in two parts; 50% after the
first 25% payment from the customer and 50% after the
second 25% payment on the CYR Project. Each payment by the
customer was 25% of the total contract of 128 million RMB,
or 32 million RMB (about $4.5 million USD at current
exchange rates) being paid by the end customer. This was
highly unusual since the standard commission payments to
outside company sales reps was only made in stages and as
payments were collected from the end customer. So in this
situation where the end customer paid 25% of the contract
plus a second 25% bring total paid by the end customer to
50% of the contract; a proper and correct commission amount
paid, for a real commission contract, would have only been
50% of the commission total of $702,461 USD or $351,230.50
USD, not the full amount of $702,461 USD. This payment in

full of the commission made it clear that it was not a true commission payment, but a mechanism to illegally funnel a bribe through L S International Ltd of Hong Kong to people within China that would award the CYR Project to the company, AZZ Inc.

16. As an additional on L S International LTD of Hong Kong and evidence to support the conclusion that payments to L S International were an illegal bribe; L S International Ltd was a new company for AZZ, Inc., that no one had dealt with or heard of prior to the CYR Project bid; the web site for L S International LTD seemed to be very minimal, not updated in years and did not really appear to be a legitimate operating company. On top of all of that, the 'commission contract' with L S International Ltd of Hong Kong specified that payment was to be in USD (United States Dollars) only and to a bank account in Hong Kong and only made directly from the parent holding company, AZZ Inc and, under no circumstance, paid by a division of the company in China, AZZ Trading Shanghai LTD; since that would be in RMB. From these unusual requests by L S International it was clear that on top of an illegal bribe in violation of the Foreign Corrupt Practices Act (FCPA), defendant AZZ Inc had agreed to assist Chinese nationals to avoid capital controls in China on RMB and

moving currency out of China since money paid in USD to a
Hong Kong account would not be subject to such currency
controls.

17. While Plaintiff was still employed and even after
left AZZ, Inc.; defendant AZZ, Inc and its employees had
and have continued to libel and slander Plaintiff by
claiming that Plaintiff was a 'poor employee', claimed the
removal of Plaintiff from the company was due to 'poor
performance'. These claims where made in spite of the fact
that for months after the company suddenly removed
Controller John Martin from the company, leaving Plaintiff
the only employee left to run a customized Percentage of
Completion Revenue recognition system and the only one left
of an original staff of four in earlier years. Originally
the accounting and IT support group at the division was a
Controller (John Martin), Assistant Controller (Louis Desy)
plus a site computer administrator, financial analyst. The
only person to remain throughout all of the changes was a
senior accounts payable person; so at one point for a
number of months in 2016 Plaintiff Louis Desy was the only
remaining person of a staff of four people. On top of all
of that when Plaintiff originally started the job in that
accounting group of four people there was only one division
of the company to do work for; in later years another work

9

for another division, AZZ Trading Shanghai was added to the work. So in spite of all this, going from four people to one person plus adding another division to do the financial reporting for, Plaintiff Louis Desy was still able to stay on schedule for doing a full closing process of the monthly financial statements within 5.5 business days by working evenings, weekends and holidays plus stay on schedule and time for all other duties needed.

18. At one point Plaintiff Louis Desy was told by management that "You better make the numbers." It was clear that defendant AZZ, Inc wanted its divisions to always make the profit that had been forecast to the public stock market and demanded that employees do 'whatever was needed' to make the reported numbers come out to what had been forecast to the public market.

19. At another point, during the payment of the bribe to L S Internation LTD, company managers verbally asked if Plaintiff Louis Desy could delete one of the wires from the bank system. When this request was made, Plaintiff Louis Desy noted that they could just simply reject or delete the wire on their own, like they had done at other times when they did not want to approve a wire or wanted a wire redone. In this instance various managers did not even want a record in the bank wire system that they had deleted the

10

wire and insisted that Plaintiff Louis Desy do it instead,
so as to leave no paper trail leading back to them. It was
the one and only time that such a request had been made and
it is clear that other managers that had arranged the bribe
,and/or were aware of what this payment really was, to L S
International LTD of Hong Kong now did not want any records
showing they were involved in the illegal bribe in
violation of FCPA.

20. During the summer of 2016, Plaintiff Louis Desy
sent an email to CEO Tom Ferguson and CFO Paul Fhelman. In
that email Plaintiff noted that Plaintiff was now doing the
work of the Controller for two of the company divisions and
also responsible for over 25% of the company wide backlog
where the two divisions had over $80 million USD in
backlog, but had only been given a minimal pay raise of 10%
after the sudden forcing out of Controller John Martin by
the company, leaving the Plaintiff receiving about 33% less
than the prior controllers. Weeks later the general manager
for the division, Sean Noel, came to talk to the Plaintiff
and explained 'that was all he was going to get' and the
company would not retaliate against the plaintiff since the
company has an official written 'open door policy'. As
events later proved, this was not correct, and a lie, since
various managers did decide to retaliate against Plaintiff

11

Louis Desy for daring to request the job title and salary
such a position would have normally commanded. As an
interesting follow up, after Mark Kaluzny as International
Electrical Group Controller left the company in the fall of
2018, Plaintiff Louis Desy was contacted by at least two
search firms that were interested in trying to place him in
that position!

21. The mechanism that AZZ Inc used to not recognized
the revenue on the CYR Project, was that the company booked
all expenses to a research and development project in
Oracle, CGI-D123, and did not recognizing any revenue on
such expenses. For large projects such as CYR revenue is
done as a percentage of completion (POC). This means that
as expenses are incurred on the project, an estimate for
the gross margin is made and then revenue is booked based
on that calculation. As an example, if the gross margin on
a project was 10%, and there was $900,000 USD spent on that
project in the month, then the amount book for revenue in
the month would be the $900,000 USD plus another 10% or
$90,000 USD, resulting in a total of $990,000 USD for
revenue. In the case of CYR, there were expenses of over
several hundred thousand dollars that if they revenue had
been recognized in both company divisions would have
resulted in revenue of over one million dollars and

12

improved the net income for AZZ Inc by that amount for FY2018. In the case of the revenue for the CYR project, the NOT recognizing revenue on it was illegal. At time management claimed they were 'looking at the CYR Project', as though they might not take the project, but there was a valid, signed contract, payments made on 50% of the project by the end of FY2018 and L S international LTD had payments for the 'commission' entered into the Oracle payables system and even a bank wire generated.

## COUNT 1

### VIOLATION OF MASSACHUSETTS PAYMENT OF WAGES LAW

Mr. Desy incorporates the above paragraphs. By failing to pay bonus wages, the Defendant violated M.G.L. c. 149, § 148, resulting in harm to Mr. Desy. This is a claim brought pursuant to M.G.L. c. 149, § 150.

## COUNT II

### VIOLATION OF MASSACHUSETTS OVERTIME LAW

Mr. Desy incorporates the above paragraphs. By failing to pay overtime wages, the Defendant violated M.G.L. c. 151, § 1A, resulting in harm to Mr. Desy. This claim is brought pursuant to M.G.L. c. 151, § 1B.

## COUNT III

### VIOLATION OF MASSACHUSETTS FEDERAL AGE DISCRIMINATION LAWS

Mr. Desy incorporates the above paragraphs. By discriminating against the plaintiff based on age, the Defendant violated M.G.L. c. 151B, resulting in harm to Mr. Desy. M.G.L. c. 151B (Massachusetts Fair Employment Practices Act) and the Federal Age Discrimination in Employment Act (ADEA) This claim is brought pursuant to M.G.L. c. 151B and the Federal Age Discrimination in Employment Act (ADEA).

## COUNT IV

## VIOLATION OF MASSACHUSETTS AND FEDERAL LAWS FOR WRONGFUL TERMINATION LAWS

Mr. Desy incorporates the above paragraphs. By wrongfully termination Mr. Desy company violated Massachusetts and Federal Laws for wrongful termination where AZZ, Inc retaliated against Mr. Desy for public policy violations where the AZZ, Inc violated various laws against retaliation where the company removed Mr. Desy after he inquired about his job title and salary. The defendant AZZ, inc violated Massachusetts and Federal Laws on wrongful termination based on public policy as partly established in Massachusetts by case law in Smith-Pfeffer v. Superintendent of Walter E. Fernald State School, 404 Mass. 145, 149-50 (1989) resulting in harm to Mr. Desy and this claim is brought pursuant to those laws.

## COUNT V

### VIOLATION OF MASSACHUSETTS LIEBEL AND SLANDER LAWS

Mr. Desy incorporates the above paragraphs. My libeling and slandering Mr. Desy, defendant AZZ, Inc has committed libel and slander against Mr. Desy, as established by Massachusetts case law on libel and slander; resulting in harm to Mr. Desy and this claim is brought pursuant to those laws.

### JURY DEMAND

Mr. Desy requests a trial by jury.

**WHEREFORE, Mr. Desy prays for judgment against the** Defendant as follows:

1.   All damages to which Mr. Desy is entitled to under Massachusetts and Federal law;

2.   Statutory trebling of damages;

3.   Attorney fees, costs, and interest as allowed by law; and

4.   Such other and further relief as the Court may deem proper and just.

**LOUIS J. DESY JR.**

**Pro Se**

15

Louis J. Desy Jr.

47 Heywood Street

Worcester, MA 01604

Phone: 508-853-1215

Fax: 206-984-3060

Email: LouisDesyjr@gmail.com

Date: Saturday, September 07, 2019

| CIVIL TRACKING ORDER (STANDING ORDER 1- 88) | DOCKET NUMBER 1985CV01315 | Trial Court of Massachusetts The Superior Court |
|---|---|---|

| CASE NAME: Desy, Louis J vs. Azz Inc. | Dennis P. McManus, Clerk of Courts |
|---|---|

| TO: Louis J Desy 47 Heywood St Worcester, MA 01604-5306 | COURT NAME & ADDRESS Worcester County Superior Court 225 Main Street Worcester, MA 01608 |
|---|---|

### TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

### STAGES OF LITIGATION                                  DEADLINE

| | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 12/09/2019 | |
| Response to the complaint filed (also see MRCP 12) | | 01/07/2020 | |
| All motions under MRCP 12, 19, and 20 | 01/07/2020 | 02/06/2020 | 03/09/2020 |
| All motions under MRCP 15 | 01/07/2020 | 02/06/2020 | 03/09/2020 |
| All discovery requests **and depositions** served and non-expert depositions completed | 07/06/2020 | | |
| All motions under MRCP 56 | 08/04/2020 | 09/03/2020 | |
| Final pre-trial conference held and/or firm trial date set | | | 01/01/2021 |
| Case shall be resolved and judgment shall issue by | | | 09/08/2021 |

**The final pre-trial deadline is <u>not the scheduled date of the conference</u>.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED 09/11/2019 | ASSISTANT CLERK Laurie Jurgiel | PHONE |
|---|---|---|

Date/Time Printed: 09-11-2019 14:46:48                                                                SCV026\ 08/2018